IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation, and TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL RECOVERY SERVICES, INC., a Utah corporation, and FEDERAL RECOVERY ACCEPTANCE, INC., a Utah corporation doing business as PARAMOUNT ACCEPTANCE,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:14-CV-170 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiffs Travelers Property Casualty Company of America and Travelers Casualty Insurance Company of America's (collectively, "Travelers") Motion for Summary Judgment. Travelers request the Court dismiss Federal Recovery Services, Inc. ("FRS") and Federal Recovery Acceptance, Inc.'s ("FRA") dba Paramount Acceptance ("Paramount") (collectively, "Defendants") counterclaims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) breach of fiduciary duty. The Court will grant in part and deny in part Travelers' Motion for the reasons discussed below.

## I. BACKGROUND

Defendants are in the business of providing processing, storage, transmission, and other handling of electronic data for its customers. Travelers issued a CyberFirst Technology Errors

and Omissions Liability Form Policy (the "CyberFirst Policy") to Defendants and Defendants are the named insureds under the policy.

Global Fitness Holdings, LLC ("Global Fitness") owns and operates fitness centers in several states.  As part of its operations, Global Fitness had numerous members who contracted with Global Fitness for access to its fitness centers.  Members provided either credit card or bank account information to Global Fitness for billing purposes ("Member Accounts Data").

Global Fitness entered into a Servicing Retail Installment Agreement with FRA that required FRA to process the Member Accounts and transfer the members' fees to Global Fitness. Global Fitness alleged that FRA retained possession of Member Accounts Data and interfered with its business dealings, thereby causing Global Fitness irreparable harm and loss.  On October 10, 2012, Global Fitness filed suit against Defendants claiming tortious interference, promissory estoppel, conversion, breach of contract, and breach of the implied covenant of good faith and fair dealing.  Global Fitness sought attorney fees and punitive damages.

On December 17, 2012, FRA informed Travelers of its lawsuit with Global Fitness via email to its insurance broker, Mike Rice.[1]  Mr. Rice responded that he had spoken with Travelers on the phone regarding the matter.[2]  In his deposition, Mr. Rice testified that Travelers represented that there was a possibility that the Global Fitness lawsuit may be covered under the breach of contract clause, but advised Mr. Rice to wait to file a claim until formal papers had been served.[3]  Mr. Rice did not file a claim with Travelers until May 22, 2013.[4]  Travelers

---

[1] Docket No. 60 Ex. A.

[2] *Id*.

[3] Docket No. 60 Ex. B, at 68.

responded in writing on June 28, 2013, with its first denial of the claim, stating that the Global Fitness lawsuit fell outside of coverage under the CyberFirst Policy.[5]

FRA requested reconsideration of the denial on July 26, 2013, and again on August 27, 2013.[6] On September 6, 2013, Travelers granted FRA's request for reconsideration and asked that FRA provide formal legal authority in support of its opposition to the denial.[7] FRA submitted its memorandum with legal authority to Travelers on November 13, 2013.[8] On December 11, 2013, Travelers again denied the claim having considered the legal authority provided by FRA.[9]

On March 7, 2014, Travelers filed the instant action for declaratory relief against Defendants seeking determination of its duty to defend under the CyberFirst Policy. On April 10, 2014, Defendants again tendered defense of the Global Fitness action to Travelers.[10] Travelers accepted the tender of defense on April 23, 2014, but with a full and complete reservation of rights, including the right to seek a judicial declaration as to its rights and obligations under the policy.[11]

On November 13, 2014, Defendants filed a motion for partial summary judgment seeking the Court's determination as to whether Travelers owed a duty to defend Defendants under the

---

[4] Docket No. 60 Ex. D.

[5] Docket No. 60 Ex. E.

[6] Docket No. 60 Ex. F; Docket No. 60 Ex. G.

[7] Docket No. 60 Ex. H.

[8] Docket No. 60 Ex. I.

[9] Docket No. 60 Ex. J.

[10] Docket No. 60 Ex L.

[11] Docket No. 60 Ex. M.

CyberFirst Policy. The Court issued its ruling on May 11, 2015, denying Defendants' motion. The Court found that Travelers did not owe Defendants a duty to defend under the CyberFirst Policy.[12] Travelers now submits this Motion for Summary Judgment requesting the Court dismiss Defendants' counterclaims against it.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[14] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[15]

## III. DISCUSSION

Travelers moves for summary judgment and request this Court dismiss Defendants' counterclaims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) breach of fiduciary duty. Each will be discussed in turn below.

### *1. Breach of Contract*

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4)

---

[12] Docket No. 45.

[13] Fed. R. Civ. P. 56(a).

[14] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[15] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

damages."[16] Travelers argues that Defendants' breach of contract claim fails as a matter of law because this Court ruled in its May 11, 2015 Order that Travelers does not owe Defendants a duty to defend under the CyberFirst Policy.

In its Response, Defendants argue that Travelers incorrectly interprets the Court's May 11, 2015 Order. Defendants argue that the "the narrow issue before the Court in that motion was whether viewing only the 'eight corners' of the complaint and policy triggered the duty to defend."[17] Defendants assert that the Court's Order "did not pertain to, and this Court has not yet had an opportunity to consider, the extrinsic evidence which is relevant to a determination as to whether Travelers owes a duty to defend."[18] Defendants essentially seek to relitigate the issue of whether Travelers owes them a duty to defend.

In its May 11, 2015 Order, the Court stated that "[a]s a general rule, 'an insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint."[19] "'If the language found within the collective 'eight corners' of these documents clearly and unambiguously indicates that a duty to defend does or does not exist, the analysis is complete.'"[20] The Court determined that a comparison of the language of the policy and the allegations in the complaint made clear that the Global Fitness action was not covered under the CyberFirst Policy.

---

[16] *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

[17] Docket No. 57, at ii.

[18] *Id*. at 1.

[19] Docket No. 45, at 7 (quoting *Fire Ins. Exch. v. Estate of Therkelsen*, 27 P.3d 555, 560 (Utah 2001)).

[20] *Id*. (quoting *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 266 P.3d 733, 737 (Utah 2011)).

The policy states that coverage is provided if the loss is caused by an "errors and omissions wrongful act."[21] "Errors and omissions wrongful act" is defined as "any error, omission or negligent act."[22] Global Fitness's Complaint and Amended Complaint against Defendants alleged that Defendants knowingly withheld information and refused to turn it over until Global Fitness met certain demands. Thus, while the policy provides coverage for errors, omissions, and negligent acts, Global Fitness' claims against Defendants allege knowledge, willfulness, and malice. Accordingly, the Court determined that the policy did not extend coverage to the Global Fitness suit.

Having lost its earlier motion, Defendants cannot seek to relitigate the same issue. It is improper for Defendants to now argue that extrinsic evidence must be used in determining the duty to defend when they failed to do so previously and failed to respond to Travelers' argument that extrinsic evidence should not be considered. As Travelers correctly indicates, Defendants did not dispute that extrinsic evidence is inadmissible and Defendants did not offer such evidence nor suggest that such evidence should be considered.[23] Defendants' argument misrepresents its prior briefing and the Court's ruling and is a disingenuous and transparent attempt to reargue an issue that this Court already decided.

> Generally, once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case. Unlike res judicata, the law of the case doctrine is not an inexorable command, but is to be applied with good sense. Accordingly, the doctrine is subject to three exceptions: (1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has

---

[21] Docket No. 28, Ex. B, CyberFirst Technology Errors and Omissions Liability Coverage Form, Section I, 2, at Bates number PRMT000923.

[22] *Id*., CyberFirst Technology Errors and Omissions Liability Coverage Form, Section II, 3, at Bates number PRMT000926.

[23] Docket No. 65, at vii.

> subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice . . . . [T]hese exceptions [are read] narrowly, requiring district courts to apply the law of the case unless one of the exceptions specifically and unquestionably applies.[24]

Here, none of the above exceptions specifically and unquestionably apply.

Under Utah law, consideration of extrinsic evidence to determine the scope of an insurer's duty to defend is generally prohibited, but may be considered if the parties contractually make the duty to defend dependent on whether there is actually a covered claim or suit.[25] In *Fire Insurance Exchange v. Estate of Therkelsen*, the Utah Supreme Court explained that the duty to defend "'arises solely under contract.'"[26] "If the parties make the duty to defend dependent on the *allegations* against the insured, extrinsic evidence is irrelevant to a determination of whether a duty to defend exists. However, if, for example, the parties make the duty to defend dependent on whether there is actually a 'covered claim or suit,' extrinsic evidence would be relevant to a determination of whether a duty to defend exists."[27]

The *Therkelsen* court provided examples to illustrate when the policy language contractually makes the duty to defend dependent on the allegations within a complaint and when the policy language indicates that consideration of extrinsic evidence is necessary in determining whether a claim is actually covered. In the first example, when a standard homeowner's policy provides that the insurer will "provide a defense at [the insurer's] expense

---

[24] *Wessel v. City of Albuquerque*, 463 F.3d 1138, 1143 (10th Cir. 2006) (citations, alternations, and internal quotations omitted).

[25] *See Estate of Therkelsen*, 27 P.3d at 560–61.

[26] *Id*. at 560 (quoting *Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1214–25 (6th Cir. 1980)).

[27] *Id*. at 561.

by counsel of [the insurer's] choice, even if the suit is groundless, false or fraudulent," the duty to defend is dependent upon the allegations within the complaint against the insured.[28]  In the second example, when an insurance policy describes the duty to defend as "we will defend an *insured* against any covered claim or suit," the court explained that consideration of extrinsic evidence is necessary to determine whether the claim or suit was actually "covered" by the policy.[29]

Courts apply this test by first examining the policy language to determine whether it is necessary to proceed beyond an "eight corners" analysis.  In *Employers Mutual Casualty Company v. Bartile Roofs, Inc.*,[30] the relevant policy provision assumed the duty to defend against any "suit" seeking "damages because of . . . property damage."[31]  The term "suit," referred to civil proceedings in which a party "'allege[s]' the existence of damages within the coverage of the applicable . . . policy."[32]  The Tenth Circuit reasoned that the definition of the term "suit" indicated that the duty to defend depends on the "'allegati[on][of] liability within the coverage afforded by the policy' rather than on a determination that the suit is actually covered by the policy"[33] and did not consider extrinsic evidence.

In *Mid-America Pipeline Co., LLC v. Mountain States Mutual Casualty*,[34] the relevant policy provision provided that the insurer "will pay those sums that the insured becomes legally

---

[28] *Id*. (alteration in original).

[29] *Id*. (quoting *Fire Ins. Exch. v. Rosenberg*, 930 P.2d 1202, 1203 (Utah Ct. App. 1997)).

[30] 618 F.3d 1153 (10th Cir. 2013).

[31] *Id*. at 1172.

[32] *Id*.

[33] *Id*. (quoting *Estate of Therkelsen*, 27 P.3d at 561).

[34] No. 2:05-CV-153, 2006 WL 1278748 (D. Utah May 8, 2006).

obligated to pay as damages because of . . . 'property damage' to which this insurance applies."[35] The district court reasoned that the scope of the contractual duty to defend is determined "with reference to what a suit seeks; [and therefore, the insurance company] must defend a suit that alleges liability within the policy's coverage."[36]

Here, the relevant provision of the CyberFirst Policy states,

> We will have the right and duty to defend the insured against any claim or "suit" seeking damages for loss to which the insurance provided under one or more of "your cyber liability coverage forms" applies . . . . However, we will have no duty to defend the insured against any claim or "suit" seeking damages for loss to which the insurance provided under "your cyber liability coverage forms" does not apply.[37]

The term "suit" is defined as,

> A civil proceeding that seeks damages or injunctive relief. Suit includes:
> a. An arbitration proceeding that seeks such damages or injunctive relief and to which the insured must submit or submits with our consent; and
> b. Any other alternative dispute resolution proceeding that seeks such damages or injunctive relief and to which the insured submits with our consent.[38]

In the same way that courts have interpreted substantially similar duty-to-defend clauses and rejected the use of extrinsic evidence, this Court also rejects the use of extrinsic evidence in determining the duty to defend. The duty to defend here is conditioned on "any claim or 'suit' seeking damages for loss to which the insurance provided . . . applies." As in the cases referenced above, the policy language indicates that the duty to defend is determined with

---

[35] *Id.* at *2.

[36] *Id.*

[37] Docket No. 28, Ex. B, CyberFirst General Provisions Form, Section I, 1, at bates number PRMT000911.

[38] *Id.*, CyberFirst General Provisions Form, Section VII, 20, at Bates number PRMT000922.

reference to what a claim or suit seeks. Therefore, Travelers must defend a suit that alleges liability within the CyberFirst Policy. Thus, consideration of extrinsic evidence is irrelevant in determining Travelers' duty to defend.

Defendants rely on *Equine Assisted Growth and Learning Association v. Carolina Casualty Insurance Company*[39] to support their argument that the Court should consider extrinsic evidence. In *Equine,* the insurance company denied the insured coverage under an insured-versus-insured exclusionary clause. A former employee of the insured sued the insured's board of trustees under the insured's name as President and CEO, so that it appeared as if the insured filed suit against itself. The former employee had no authority to sue on the insured's behalf. The Utah Supreme Court began its analysis by comparing the relevant policy provisions with the complaint to determine whether the contract conditions the duty to defend solely in reference to the complaint. "Finding that this comparison neither eliminates nor establishes a duty to defend, [the court] conclude[d] that the relevant contractual provision ties the duty to defend to facts not contained in the complaint."[40] As a result, the court found it necessary to consider extrinsic evidence to determine whether the claim was actually brought "by, on behalf of, or in the right of [the insured]" to invoke the exclusionary clause.[41]

Such an ambiguity does not exist here. A comparison of the policy language and the allegations in the complaint eliminates a duty to defend, which makes extrinsic evidence irrelevant. Here, the complaint alleges that Defendants knowingly withheld information and refused to turn it over until Global Fitness met certain demands. Thus, the complaint alleges

[39] *Id*. at 733.

[40] *Id*. at 736.

[41] *Id*. at 738.

knowledge, willfulness, and malice while the CyberFirst Policy covers only errors, omissions, and negligent acts. As the Utah Supreme Court said in *Equine*, "an insurer would have no duty to defend an insured based on a complaint sounding solely in battery when the policy excludes intentional torts from coverage. Under these circumstances, the duty-to-defend analysis . . . focus[es] on two documents: the insurance policy and the complaint . . . and extrinsic evidence plays no part in the analysis."[42] The same is true here.

Accordingly, the Court maintains its May 11, 2015 Order finding that Travelers does not owe a duty to defend Defendants under the CyberFirst Policy. Without a duty to defend, Defendants cannot prevail on its breach of contract counterclaim. Thus, the Court will grant summary judgment on this issue and dismiss Defendants' counterclaim for breach of contract.

*2. Breach of the Implied Covenant of Good Faith and Fair Dealing*

Travelers argues that a claim for breach of the implied covenant of good faith and fair dealing fails where the insurer's denial of coverage was proper and the insurer did not breach the contract. However, "[i]n Utah, a plaintiff may sue on a contract for: (1) breach of the contract's express terms; and/or (2) breach of the covenant of good faith and fair dealing, which is an implied duty that inheres in every contractual relationship."[43] Under the covenant, "the contracting parties each impliedly promise not to intentionally or purposely do anything that will destroy or injure the other party's right to receive the fruits of the contract, and to comply with

---

[42] *Id*. at 736 (citation and internal quotation omitted).

[43] *Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944, 947 (10th Cir. 2011).

the covenant, a party must act consistently with the agreed common purpose and the justified expectations of the other party."[44]

The Utah Supreme Court has held that "'when an insured's claim is fairly debatable, the insurer is entitled to debate it and cannot be held to have breached the implied covenant of good faith if it chooses to do so.'"[45] "Therefore, an insurer cannot be held to have breached the covenant of good faith and fair dealing on the ground that it wrongfully denied coverage if the insured's claim, although later found to be proper, was fairly debatable at the time it was denied."[46]

Under this framework, the Court will deny summary judgment on this claim. Defendants allege that Travelers breached the implied covenant of good faith and fair dealing by (1) improperly and untimely denying coverage; (2) "failing to diligently investigate, fairly evaluate, and promptly and reasonably communicate with FRA since the claim was initially tendered in December 2012;"[47] (3) inappropriately requiring FRA to first receive suit papers before initiating a claim, and (4) threatening to have defense costs reimbursed.[48]

To the extent Defendants' bad faith arguments root in Travelers' denial of coverage, such arguments will not be considered because an insurer cannot be held to have breached the covenant of good faith and fair dealing if the claim was fairly debatable at the time it was

---

[44] *Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 533 (Utah 2002) (citations, alterations, and internal quotations omitted).

[45] *Jones v. Farmers Ins. Exch.*, 286 P.3d 301, 304 (Utah 2012) (quoting *Billings ex rel. Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 (Utah 1996)).

[46] *Id.* (citation and internal quotation omitted).

[47] Docket No. 57, at 6.

[48] *Id*. at 7.

denied.[49] Indeed, this Court has determined that Travelers does not owe a duty to defend Defendants under the CyberFirst Policy and that denial of coverage was proper in this case.

Additionally, Defendants' argument that Travelers' threat to obtain reimbursement of defense costs evidences bad faith also fails because it is unsupported by law and by the record. Defendants cite to *U.S. Fidelity v. U.S. Sports Specialty*[50] for the proposition that an insurer may only claim a right to reimbursement for a claim if the express terms of the insurance contract create an enforceable right to reimbursement.[51] However, whether Travelers has a right to reimbursement of defense costs is an issue separate from the implied covenant of good faith and fair dealing.

However, to the extent Defendants argue that Travelers (1) inappropriately required Defendants to first receive suit papers before initiating a claim and (2) failed to "diligently investigate, fairly evaluate, and promptly and reasonably communicate with FRA since the claim was initially tendered in December 2012"[52]— factual issues preclude summary judgment.

Defendants provide expert testimony stating that Travelers' conduct did not measure up to the standard required for insurance claim investigations.[53] The CyberFirst General Provisions Form states:

> **SECTION V – CYBER LIABILTY CONDITIONS**
> **2. Duties In the Event of a Claim or Suit**
> a. if a claim or "suit" is made or brought against any insured, you must:
> (1) Immediately record the specifics of the claim or "suit" and the date received; and

[49] *Billings*, 918 P.2d at 465.

[50] 270 P.3d 464 (Utah 2012).

[51] Docket No. 57, at 8.

[52] *Id*. at 6.

[53] Docket No. 57 Ex. C.

> (2) Notify us in writing of the claim or "suit" as soon as practicable, but in no event after the policy period or the Basic Extended Reporting Period, or the Supplemental Extended Reporting Period if such reporting period is provided.[54]

Defendants' expert witness, Paul Brenkman, argues that it was inappropriate to require FRA to first receive suit papers before initiating a claim under the policy language. Mr. Brenkman asserts that the policy provisions differentiate between a claim and a suit, and therefore, "a 'suit' is not a necessary condition before there is a duty to defend."[55] Mr. Brenkman contends that requiring the filing of a lawsuit as a condition precedent to accepting Defendants' claim report is contrary to industry customs, practices and standards.[56]

Defendants argue that by inappropriately requiring the filing of suit papers before initiating its investigation into Defendants' claim, Travelers' denial of its claim in June 2013 was dilatory and resulted in severe financial consequences to Defendants. In his report, Mr. Brenkman asserts, "Travelers' claim handling processes, or the lack thereof, left [Defendants] to fend for [themselves] during critical time periods with severe financial consequences to [Defendants]."[57]

Under the implied covenant of good faith and fair dealing, "a party must act consistently with the agreed common purpose and the justified expectations of the other party."[58] At the very least, the covenant contemplates that the insurer "will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act

---

[54] Docket No. 28, Ex. B, CyberFirst Technology Errors and Omissions Liability Coverage Form, Section V, 2, at Bates number PRMT000916.

[55] Docket No. 57 Ex. C, at 9.

[56] Docket 57, at 15.

[57] *Id*. at 21.

[58] *Prince*, 56 P.3d at 533 (citations and internal quotations omitted).

promptly and reasonably in rejecting or settling the claim."[59] Here, the narrow issue of whether Travelers inappropriately required the filing of suit papers in contravention of the CyberFirst Policy provisions, which may have resulted in a dilatory denial of defense causing severe financial consequences to the Defendants, is a factual issue and may be submitted to the jury.

Under Utah law, "'[w]hether there has been a breach of good faith and fair dealing is a factual issue, generally inappropriate for decision as a matter of law.'"[60] "Summary judgment is appropriate only when reasonable minds could not differ in concluding that the party accused of breaching the covenant did not wrongfully exercise its discretionary power or contractual authority for a reason beyond the risks that the other party assumed or for a reason inconsistent with the other party's justified expectations."[61] Accordingly, the Court denies Travelers' motion for summary judgment on this issue. Any further proceedings, including trial, are limited to the narrow issue of whether Travelers' initial handling of Defendants' claim measured up to the required standard of care.

*3. Breach of Fiduciary Duty*

"In a third-party situation, the insurer controls the disposition of claims against its insured, who relinquishes any right to negotiate on his own behalf."[62] "Wholly apart from the contractual obligations undertaken by the parties, the law imposes upon all agents a fiduciary

---

[59] *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985).

[60] *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 968 (Utah 2008) (quoting *Republic Grp., Inc. v. Won-Door Corp.*, 883 P.2d 285, 291 (Utah Ct. App. 1994)).

[61] *Id*. at 968–69.

[62] *Beck*, 701 P.2d at 799.

obligation to their principals with respect to matters falling within the scope of their agency."[63] "To prove a breach of fiduciary duty claim, a plaintiff must demonstrate that the defendant owed a duty, the defendant breached the duty, the plaintiff suffered damages, and the plaintiff's damages were actually and proximately caused by the defendant's breach."[64] In this case, the Court has determined that Travelers does not owe a duty to defend Defendants under the CyberFirst Policy. Without a duty to defend, Defendants cannot show that Travelers breached its fiduciary duty to defend. Accordingly, the Court will grant summary judgment on this issue and dismiss Defendant's counterclaim for breach of fiduciary duty.

## IV. CONCLUSION

It is therefore

ORDERED that Plaintiffs' Motion for Summary Judgment (Docket No. 49) is GRANTED IN PART AND DENIED IN PART.

DATED this 12th day of January, 2016.

BY THE COURT:

Ted Stewart
United States District Judge

[63] *Id*. at 799–800.

[64] *Giles v. Mineral Res. Int'l, Inc.*, 338 P.3d 825, 827 (Utah Ct. App. 2014).